UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAY KILLINGER,
          Plaintiff,

v.                                                                Case No. 11-C-0015

CAMPBELLSPORT SCHOOL DISTRICT,
          Defendant.

## DECISION AND ORDER

Pro se plaintiff Jay Killinger brings this lawsuit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., against his former employer, Campbellsport School District. He alleges that he was terminated because of his sex. This order addresses defendant's motion for summary judgment.

Between 1991 and 2010, plaintiff was employed as a teacher in the Campbellsport School District. In April 2010, the Campbellsport School District Administration recommended that the Campbellsport Board of Education not renew plaintiff's contract for the 2010–11 school year. The Administration also recommended that plaintiff be immediately discharged. The Administration's recommendations were based on the recommendation of the principal of plaintiff's school, Kristen Langer. On April 21, 2010, the Board decided to not renew plaintiff's contract for 2010–11. However, the Board did not immediately discharge plaintiff. As a result, plaintiff was allowed to finish the 2009–10 school year and was terminated at the end of that year.

Plaintiff contends that the reason for his termination was discrimination on the basis of sex. He contends that Langer viewed him unfavorably because he was male and

therefore gave him negative performance reviews and ultimately recommended that he be terminated.

Before going further, I note that plaintiff presents his claim as one involving "sexual harassment (nonsexual)." (Br. in Opp. 1, ECF No. 43.) However, it is clear that plaintiff does not have a sexual harassment claim and that his only viable legal theory is disparate treatment. In a typical sexual harassment case, the plaintiff alleges that he or she has been subjected to unwelcome sexual advances, requests for sexual favors, or other verbal or physical harassment of a sexual nature. Alternatively, a plaintiff in a sexual harassment case might allege that the defendant made offensive comments about the plaintiff's sex. Cf. http://www.eeoc.gov/laws/types/sexual_harassment.cfm (EEOC's definition of "sexual harassment"). In the present case, plaintiff is not alleging anything of this sort. Instead, he alleges that defendant treated him differently than female teachers and that his sex was the reason for this difference in treatment. Plaintiff's legal theory is thus best characterized as sex-based disparate treatment.

To survive a motion for summary judgment in a disparate treatment case, the plaintiff must present either direct or indirect evidence of discriminatory intent. See, e.g., Naik v. Boehringer Ingelheim Pharm., Inc., 627 F.3d 596, 599 (7th Cir. 2010). Direct evidence means something like an admission or testimony by the defendant that it fired the plaintiff because of his sex. See Coco v. Elmwood Care, Inc., 128 F.3d 1177, 1178 (7th Cir. 1997). In the present case, plaintiff does not have any such evidence, and so he must rely on indirect evidence and the McDonnell Douglas formula. Accordingly, to survive summary judgment, plaintiff must first establish a prima facie case of discrimination by showing that: (1) he is a member of the protected class; (2) he was performing well enough

2

Case 2:11-cv-00015-LA   Filed 02/22/12   Page 2 of 6   Document 47

therefore gave him negative performance reviews and ultimately recommended that he be terminated.

Before going further, I note that plaintiff presents his claim as one involving "sexual harassment (nonsexual)." (Br. in Opp. 1, ECF No. 43.) However, it is clear that plaintiff does not have a sexual harassment claim and that his only viable legal theory is disparate treatment. In a typical sexual harassment case, the plaintiff alleges that he or she has been subjected to unwelcome sexual advances, requests for sexual favors, or other verbal or physical harassment of a sexual nature. Alternatively, a plaintiff in a sexual harassment case might allege that the defendant made offensive comments about the plaintiff's sex. Cf. http://www.eeoc.gov/laws/types/sexual_harassment.cfm (EEOC's definition of "sexual harassment"). In the present case, plaintiff is not alleging anything of this sort. Instead, he alleges that defendant treated him differently than female teachers and that his sex was the reason for this difference in treatment. Plaintiff's legal theory is thus best characterized as sex-based disparate treatment.

To survive a motion for summary judgment in a disparate treatment case, the plaintiff must present either direct or indirect evidence of discriminatory intent. See, e.g., Naik v. Boehringer Ingelheim Pharm., Inc., 627 F.3d 596, 599 (7th Cir. 2010). Direct evidence means something like an admission or testimony by the defendant that it fired the plaintiff because of his sex. See Coco v. Elmwood Care, Inc., 128 F.3d 1177, 1178 (7th Cir. 1997). In the present case, plaintiff does not have any such evidence, and so he must rely on indirect evidence and the McDonnell Douglas formula. Accordingly, to survive summary judgment, plaintiff must first establish a prima facie case of discrimination by showing that: (1) he is a member of the protected class; (2) he was performing well enough

to meet his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees not in his protected class were treated more favorably. Naik, 627 F.3d at 599–600. If he establishes all four elements, the burden shifts to defendant to offer a legitimate, nondiscriminatory reason for the adverse employment action. If defendant meets its burden, plaintiff must demonstrate that the reasons offered were pretextual. Id. at 600.

The parties agree that plaintiff is a member of a protected class and that he suffered an adverse employment action. In its motion for summary judgment, defendant argues that plaintiff cannot establish the remaining elements of his prima facie case—that he was meeting his employer's legitimate expectations and that similarly situated females were treated more favorably.

Defendant argues that plaintiff was not meeting its legitimate expectations and cites a large number of performance deficiencies. These deficiencies are itemized in two memoranda that defendant sent to the Campbellsport Board of Education on April 21, 2010. (Olson Aff., Exs. A & B, ECF Nos. 41-1 & 41-2.) In the first memorandum, defendant recommends that plaintiff's contract not be renewed and cites dozens of reasons in support of this recommendation. These reasons are divided into four categories: performance, communication, classroom management, and leadership/professionalism. Although I will not list all of these reasons here, I will list some in order to give the reader a sense of the kinds of performance deficiencies that defendant identified: making inappropriate comments to a parent; writing inappropriate comments on a student's report card; classroom safety issues (the memorandum lists at least ten instances over the course of one year in which students were injured in plaintiff's

3

classroom); making inappropriate comments about the principal; inappropriate physical contact with a student; inappropriate and unprofessional communication to students about stereotypes; and engaging in unprofessional and disrespectful conduct at a teacher team meeting. In the second memorandum, defendant recommends that plaintiff be discharged and cites six instances in which plaintiff engaged in unprofessional or insubordinate conduct—including his refusal to follow the administration's directives for improving his performance.

In an effort to show that he was meeting his employer's legitimate expectations, plaintiff submits a number of letters of recommendation and complimentary notes that he received from coworkers, supervisors, parents and students over the course of his career. However, assuming that these letters and notes are admissible, the most that they show is that certain individuals thought that plaintiff was a good teacher at certain times during his career. They do not address whether plaintiff was meeting his <u>employer's</u> legitimate expectations at the time he was terminated. See Kephart v. Inst. of Gas Tech., 630 F.2d 1217, 1223 (7th Cir. 1980) ("the judgments of some who thought [plaintiff's] work was good" does not create a triable issue of fact as to whether plaintiff had met his employer's legitimate expectations). In addition, some of defendant's concerns with plaintiff's performance in the year leading up to his termination were that he often engaged in inappropriate and unprofessional conduct and was insubordinate. The positive letters and notes do not address these particular concerns.

Moreover, some of the specific evidence that plaintiff has submitted confirms that he engaged in conduct that his employer could legitimately consider inappropriate, unprofessional and insubordinate. For example, on February 10, 2010, plaintiff sent an e-

mail to the entire Campbellsport School District that could be viewed as an inappropriate and unprofessional response to the administration's criticism of the safety of his classroom. (Attach. 29 to Pl.'s Br., ECF No. 43-3 at 26-29.) The e-mail begins by stating that "K. Langer, J. Ganske, and D. Knopp (sorry if I forgot anybody) are very concerned about the physical environment of my classroom." Plaintiff then asks everyone in the district to complete a survey that ranks the safety of various activities that occur in schools, including contact football, throwing a cheerleader in the air, and "having hammers in a box." On another occasion, after the administration criticized plaintiff's treatment of his coworkers, plaintiff asked other teachers to sign a form in which they answered the question "Does Jay Killinger treat you poorly?" (Attach. 28 to Pl.'s Br., ECF No. 43-3 at p. 25.)

Finally, although plaintiff attempts to rebut some of the performance deficiencies identified in defendant's memoranda, he does not dispute that he is guilty of failing to meet at least some of his employer's legitimate expectations. For example, plaintiff does not dispute that at least ten students were injured in his class over a one-year period, that he had inappropriate physical contact with a student, or that he engaged in unprofessional and disrespectful conduct at a teacher team meeting. To establish a prima facie case, a plaintiff must show that he was meeting all, not merely some, of his employer's legitimate expectations. See Fane v. Locke Reynolds Corp., 480 F.3d 534, 540 (7th Cir. 2007); Calder v. TCI Cablevision of Missouri, Inc., 298 F.3d 723, 729 (8th Cir. 2002).

Because it is clear that plaintiff failed to meet at least some of defendant's legitimate expectations, plaintiff cannot carry his burden to establish a prima facie case. I therefore do not need to consider whether plaintiff has shown that he was treated less favorably than similarly situated females.

5

Case 2:11-cv-00015-LA   Filed 02/22/12   Page 5 of 6   Document 47

Accordingly, **IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED**. The Clerk of Court shall enter final judgment.

Dated at Milwaukee, Wisconsin, this 22nd day of February 2012.

s/ Lynn Adelman
LYNN ADELMAN
District Judge